## RESTRICTION OF LOTS FOR RESIDENCE PURPOSES ONLY.

Circuit Court of Cuyahoga County.

IDA HILLMAN ET AL V. THE BELT & TERMINAL REALTY
COMPANY ET AL.

Decided, January 22, 1912.

*Restrictions—General Plan—Notice of—Common Law Dedication of
Street—Abutter on Undedicated Street—Rights of.*

1. In order to enforce an alleged general plan for the restriction of all
   the lots in an allotment to use for residence purposes only, it must
   appear that sales were made with notice of the plan and under
   an agreement, express or implied, that the plan was to be carried
   out with respect to the lots sold.
2. A common law dedication of a street is not proved by evidence that
   the original owner of the premises improved the street and sold
   lots with reference to it, referring to an unrecorded plat, that
   the city renamed the street, placed a sign with the new name at
   a corner of the street, and gas lamps on it, renumbering and
   cleaning the street.
3. Abutters upon an undedicated street have a right to have it kept·
   open sufficiently for ingress and egress to and from their lots.

*C. N. Sheldon* and *William Howell,* for plaintiffs in error.
*Kline, Tolles & Morley,* contra.

NIMAN, J.; WINCH, J., and MARVIN, J., concur.

The plaintiffs are the owners of certain lots located in a sub-
division and allotment made about the year 1900 by one C. O.
Evarts, located in the city of Cleveland, the plaintiff, Ida Hill-
man, owning sublot No. 1; the plaintiffs, Henry B. Ricker and
Margaret A. Ricker, owning sublot No. 5, and the plaintiffs
Charles Olson and Mary Olson, owning sublot No. 7.

The plat of the allotment as laid out by Evarts contained a
street.designated therein as Du Broy street, running westerly
from Woodland Hills avenue through the allotment, and having
no outlet at the west end, being what is known as a dead end
street.   This strip of land was graded, curbed, paved and other-
wise improved by Evarts before the lots owned by plaintiffs

were sold to them or those through whom they acquired title. The plaintiff's lots front on the north side of this street, and were sold with reference thereto.

Since the plaintiffs acquired their lots the defendant, the Belt & Terminal Realty Company, bought all of the lots on the other side of Du Broy street and several on the same side, and in 1910 further obtained from Evarts a conveyance of the land within the borders of said Du Broy street.

The defendant the Cleveland Short Line Railway Company has obtained title from the Belt & Terminal Realty Company, to a portion of these lots, and, it is averred in the amended petition, is about to construct a four track line of steam railroad across the same.

The defendant, J. W. Smith, on July 1, 1908, purchased of the Belt & Terminal Realty Company a part of the lots acquired by it on the southerly side of said Du Broy street, and has erected thereon a brick factory building for the business of sawing, dressing, furnishing and selling stone.

The defendant, W. H. Whitmore, has likewise, under some arrangement, acquired a portion of these lots, and is using them for a place of manufacturing and compounding oils. On the south side of said Du Broy street the defendant, the New York, Chicago & St. Louis Railway Company, has built a switch, which, near the west end of the street, encroaches upon the south side of the street. In front of the premises occupied by the manufacturing business of the defendant Smith, it is upon the sidewalk portion of the street. No part of the traveled portion of the street is interfered with. This switch is used by those having manufacturing concerns on the property embraced in the allotment, and to some extent, at least, has been used by others.

It is claimed by the plaintiffs that at the time Evarts laid out the allotment and sold the lots owned by plaintiffs he restricted all the lots therein to an exclusively residence purpose, and that the defendants and each of them when they acquired their respective portions had notice of this restriction.

It is further claimed by the plaintiffs that Du Broy street became a public street of the city of Cleveland, and that the con-

struction of the switch-track on a portion of said street is an invasion of their rights. They pray in their amended petition that the defendants, and each of them, be perpetually enjoined from making any use of said lots, or any of them, contrary to said restriction, and from operating or using said switch track along said street; and that said defendants may be required by mandatory order to remove from said lots the factory building, engines, machinery, derricks, switch-tracks, and all other structures, objects or buildings thereon that violate in any way said restriction.

It becomes necessary, then, to determine whether the allotment in question is restricted to residence purposes only.

The deeds from Evarts to such of the plaintiffs as acquired title directly from him, and the deeds from Evarts conveying the other lots owned by the respective plaintiffs, contain no such restriction. In no deed conveying any lot in the allotment was there written such a restriction.

It is asserted by the plaintiffs, however, that Evarts after laying out the allotment upon a general plan of improvement, proceeded to sell lots in the subdivision to various persons upon the representation and promises that all of the lots in said allotment should be sold and used for residence purposes only; that sublots 1, 5 and 7 were sold by him to the plaintiffs, or their predecessors in title, upon the express understanding and agreement that they should be used for residence purposes only, and that all the remaining lots in the allotment, all of which were then owned by him, should be sold and used for residence purposes only; that the plaintiffs, in reliance upon said plan and in accordance with said agreement, have improved their respective lots with buildings used exclusively for residence purposes.

It is contended that these promises and representations and the plan of improvement of said street and property, imposed upon all of the lots in the allotment a restriction that they be used only for residence purposes.

That an agreement restricting the use of land may be proved by parol is laid down in Volume 1 of Jones on the Law of Real Property and Conveyancing, Section 744, and the cases cited

by the author sustain this proposition.   In a proper case equity will enforce the observance of parol restrictions.   To make such a case there must be present certain elements which are well stated in an article in 6 Harvard Law Review, 280, where the result of the cases is accurately announced in the following language:

"In order that relief may be granted in favor of any one purchaser against another, there must be something more than the mere covenant of each purchaser with the vendor; and also that it must appear that back of this was some general plan relating to all the lands sold, intended for the common advantage of the purchasers, and entering into the consideration of the purchases. It must also appear that the sales were made with notice of this plan and under an agreement, express or implied, that the plan was to be carried out with respect to the lots or to be sold in pursuance of it.   Any purchaser of a part of this land with notice of this plan or purpose, is subject in equity to the restrictions imposed for the purpose of carrying it out, and has the benefit of the restriction placed upon others without regard to the order of their conveyances."

In the case at bar, the evidence relied upon to establish the restriction fails, in our opinion, to measure up to this test, and we hold that the defendants are not restricted in the use of their lots to residence purposes only.

This conclusion necessarily disposes of the other questions in this case, except the right of the defendants to maintain and operate the switch with its encroachments upon Du Broy street.

The plat of the allotment was never recorded.   The street was never dedicated to and accepted by the city, unless there was a common law dedication by Evarts and an implied acceptance of the street by the city.   The facts relied upon by the plaintiffs in support of this view are the platting of the property by Evarts on the plan produced in evidence, and the sale of lots bounding on the street and referring to the plat, its renaming by the city and placing of a sign bearing its name "Quebec" at the corner of said street where it comes into Woodhill avenue, and by the placing of gas lamps on said street, renumbering the street and cleaning the same.

In *City of Toledo* v. *Converse et al*, 21 C. C., 239, affirmed in 66 O. S., 678, part 1 of the syllabus is as follows:

"In order to constitute a completed and valid dedication of land to the public, it must appear that the owner of the land clearly and unequivocally indicated by his words or acts an intention to dedicate the same, and there must also be an acceptance thereof by the public."

In *Railroad Co.* v. *Village of Roseville*, 76 O. S., 109, it was held:

"To show the establishment of a street by a common law dedication, it is essential to prove clearly that the owner of the land intended to donate it for that use, and to prove also an acceptance.

"An intention by a railroad company to dedicate a street is not clearly shown by proof that a way over its tracks and unenclosed lands had been used for about forty years by the public, when during the entire time the way was maintained by the company, and was used by its patrons and the use by the public was merely permissive.

"An acceptance by a city or village of the dedication of a street can not be shown by proof of user by the public, but it is essential that acts of acceptance by proper officials be shown."

The evidence fails to indicate clearly and unequivocally an intention on the part of Evarts to dedicate this street, and there is no sufficient evidence that the city ever accepted the same.

The plaintiffs can not, therefore, complain of the presence of the switch as an obstruction to a public street, but must stand upon the peculiar injury, if any, done to them, in their property rights in said street.

In spite of the fact that the street is not a public one, the plaintiffs are entitled to have it kept open for access to their respective properties, and if such access were interfered with or obstructed, it would be an invasion of their property rights, which, under proper circumstances, would entitle them to an injunction. Such is not the case, however. The entire track is on the opposite side of the street from their property and encroaches only slightly upon the street, where it does at all. The plaintiffs have free and unobstructed access to their respective

houses over the entire width of the street for the greater part of the way, and over much more than half of the width of the rest of the way.

In *Herzog et al* v. *Railway Co. et al*, 6 C.C.(N.S.), 527, it was held that injunction would not lie to restrain the laying of a spur track in a public street, and the holding was based on the ground that ingress and egress to and from the property of the plaintiff were not interfered with. This case was affirmed by the Supreme Court, without report, in 74 O. S., 440.

In *Smedes* v. *Railway*, 16 O. D., 743, it was held:

"Injunction will not lie to restrain the laying of a surface spur track and the erection above it of a single open truss bridge on the opposite side of the street from the plaintiff's property, there being no injury of a special kind peculiar to him and not shared by him in common with other lot owners abutting the streets."

It was also decided in *Gunnin* v. *Railway Co.*, 2 N.P.(N.S.), 411, that the laying of a spur-track in the street, as distinguished from a track for general railroad purposes, is not such a diversion of the street from its ordinary uses as to interfere with the private rights of abutting owners, or beyond the power of council to authorize, and that injunction against the laying of such a track will not lie on the petition of an abutting property owner, where it does not appear that any of his rights or property in the street will be materially interfered with, and who having notice of the proposed construction did not file his petition for several months, or until the work was nearly completed.

In view of the conclusion stated, it is unnecessary to consider the effect of the delay of the plaintiffs in beginning this action until this switch track was laid.

The relief sought by the plaintiffs is denied, and the amended petition is dismissed.